CALVIN CHOCK MING KAM and SHIRLEY SAU LING KAM, Plaintiffs–Appellants, and STATE OF HAWAII, DEPARTMENT OF LAND AND NATURAL RESOURCES, Intervenor–Plaintiff–Appellant, v. EDWIN CHA SON NOH, MIRIAM CHUN NOH, and CHARLES YOO, doing business as C. Yoo Construction, Defendants–Appellees

NO. 12861

(CIV. NO. 87–2740–08)

MARCH 9, 1989

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY LUM, C.J.

The question presented in this appeal is whether a restrictive covenant in a deed imposing building height limitations expired by operation of Hawaii Revised Statutes (HRS) § 171–63(b). The statute, relating to the sale of public lands by the State, provides that "all restrictions relating to the use" of residential lots sold in fee simple shall expire within ten years after issuance of the deed. The court below dismissed Appellants' complaint seeking enforcement of the restrictive covenant, finding that the covenant expired by operation of law. Because we conclude that § 171–63(b) limits only the length of time during which the State may restrict the *purpose* for which the property is used, and does not affect the enforceability of building height restrictions, we reverse the judgment of the court below.

I.

Appellants, Calvin Chock Mong Kam and Shirley Sau Ling Kam (the Kams), own a residence situated on the slopes of Diamond Head. They acquired their property in 1968. Appellees, Edwin Cha Son Noh and Miriam Chun Noh (the Nohs), are neighbors of the Kams. The Nohs acquired their adjacent lot in 1966. The State of Hawaii, through its Department of Land and Natural Resources (DLNR), was the original owner of all lots in the subdivision where the Kams and Nohs reside. The deed by which the Nohs acquired their lot from the State of Hawaii contains a covenant that "[n]o portion of any structures shall be more than 15 feet

above the highest approved finished grade at the building."[1] An identical height limitation is incorporated by reference into the Kams' deed, and is common to all deeds issued by the State for lots in "Increment One" of the subdivision.

In early 1987, the DLNR denied the Nohs' request to waive the fifteen–foot height restriction. The Nohs nevertheless applied for a building permit from the City and County of Honolulu for proposed construction which would exceed the height limitation. The permit was issued on May 15, 1987 and construction commenced shortly thereafter.

On July 24, 1987, DLNR served Appellee Edwin Noh with a Cease and Desist Notice. Despite the notice, the Nohs continued construction on their home, causing the Kams to file a complaint against the Nohs and their contractor, Appellee Charles Yoo, on August 25, 1987. The complaint alleged that the Nohs had intentionally violated the fifteen–foot height restriction in their deed, and sought an injunction against further construction and an order requiring the Nohs to tear down the improvements which exceeded the fifteen–foot height restriction, as well as monetary and punitive damages. The Kams also moved for a temporary restraining order. The parties stipulated to entry of the temporary restraining order on August 31, 1987.

The Nohs responded with a motion to dismiss on the grounds that the building height restriction had lapsed according to HRS § 171–63(b). The State of Hawaii, through DLNR, intervened as a plaintiff, since, as grantor of the property, the State was entitled to enforce the restrictive covenant in the deed. After a hearing on the motion, the lower court dismissed the action, finding that the height restriction in the deed had expired by virtue of the operation of HRS § 171–63(b). Appellants filed a motion for reconsideration which was denied. This appeal followed.

---

[1] The deed covenant contains the following language:

(e) The Board of Land and Natural Resources shall have the right to judge interference of views and to require modification in design to lessen such interference of views from neighboring lots; it being understood and agreed that:

1. No portion of any structure(s) shall be more than 15 feet above the highest approved finished grade at the building.

■■■■■■■■■■■■■■■

## II.

Appellants contend that the court below erred in concluding that the fifteen–foot height restriction in the Nohs' deed was rendered unenforceable by HRS § 171–63(b)[2] thereby permitting the Nohs to build as high as the zoning regulations will allow. Subsection § 171–63(b)[3] reads in pertinent part:

Anything in this chapter to the contrary notwithstanding, in case of a residential lot sold in fee simple, *all restrictions relating to the use thereof shall expire ten years after the date of the issuance of the patent or deed by the State* or fifteen years after the date of the sale by the State, whichever is sooner, provided that any change in use of the lot after the ten or fifteen years, as the case may be, shall be in accordance with applicable state and county or city and county zoning requirements. (Emphasis added).

Appellants Kam and DLNR contend that the language "all restrictions relating to the use thereof" is susceptible of more than one interpretation, and that the legislature intended the expiration period to limit only the duration of restrictions relating to the *purpose* to which land obtained from the State is put, such as "residential," "agricultural," or "resort," and not *all* building and design restrictions, such as the height limitation at issue in this case.

We agree with Appellants that the statutory language "all restrictions relating to the use thereof" is susceptible of more than one interpretation.

---

[2] Appellants Kam urge as error several of the lower court's Conclusions of Law including the following:

16. The height limitation contained in the Nohs Deed is a restriction on the use of the Property imposed by the State of Hawaii, which expired pursuant to HRS § 171–63(b).

17. The height limitation on the use of the Property was removed by the operation of law, as reflected in HRS Section 171–63(b), which provides that "anything in this chapter to the contrary notwithstanding, in case of a residential lot sold in fee simple, all restrictions relating to the use thereof shall expire ..." Accordingly, the Nohs must only comply with the zoning requirements of City and County of Honolulu.

[3] HRS § 171–63 is entitled "waiver of restrictions" and comprises a portion of Chapter 171, relating to the management and disposition of public lands.

Where a statute is susceptible to more than one interpretation, the court will look to the intent of the legislature. *Puchert v. Agsalud*, 67 Haw. 25, 34–35, 677 P.2d 449, 456–57 (1984).

The intention of the legislature is to be obtained primarily from the language contained in the statute itself. *In re Hawaiian Tel. Co.*, 61 Haw. 572, 577, 608 P.2d 383, 387 (1980). The word "use" is not defined in HRS Chapter 171 and the legislative history of § 171–63 is not helpful in ascertaining the intended meaning of the term. It is apparent, however, from a reading of the entire provision and of the other sections of Chapter 171 that the term "use" was employed by the legislature as synonymous with "purpose."

Where the meaning of a word is unclear in one part of a statute but clear in another part, the clear meaning can be imparted to the unclear usage on the assumption that it means the same thing throughout the statute. 2A *Sutherland Statutory Construction* § 47.16 (4th ed. 1984); *Board of Supervisors of Albemarle County v. Marshall*, 215 Va. 756, 214 S.E.2d 146, 150 (1975). The first sentence of § 171–63(b) twice employs the term "use." It provides that:

> In case of a residential lot, the board may, subject to the consent of each holder of record having a security interest, waive strict adherence to the *use thereof for residential purposes*, if the owner or lessee desires to utilize part of the land for agricultural purposes together with the owner's or lessee's residence, provided that the *agricultural use* is not inconsistent or contrary to local applicable health or zoning ordinances. (Emphasis added).

Thus, within subsection 171–63(b) itself, "use" refers to the purpose to which the land is put, specifically residential or agricultural use.

The context in which the term "use" is employed throughout Chapter 171 lends further support to this construction. It is a generally accepted principle of statutory construction that "[l]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another." HRS § 1–16; *Zator v. State Farm Mut. Auto. Ins. Co.*, 69 Haw. ___, 752 P.2d 1073, 1075 (1988). "In the absence of an express intention to the contrary, words or phrases used in two or more sections of a statute are presumed to be used in the same sense throughout." *Gaspro, Ltd. v. Commission of Labor & Indus. Relations*, 46 Haw. 164, 172, 377

P.2d 932, 936 (1962); *State v. Taylor*, 49 Haw. 624, 635–36, 425 P.2d 1014, 1021 (1967). Moreover, the rule that statutes "in pari materia" should be construed together has the greatest probative force in the case of statutes relating to the same subject matter passed at the same session of the legislature, especially if they were enacted on the same day. *Sutherland, supra*, § 51.03.

The relevant provision, HRS § 171–63(b), was adopted in 1962 by the First State Legislature, simultaneously with the enactment of most of Chapter 171, including §§ 171–10 and 171–33.[4] *See* Act 32, 1962 Haw. Sess. Laws, at 95. Section 171–10 requires the Board of Land and Natural Resources to classify all public lands into one of thirteen categories of uses, including, for example, agricultural, residential, recreational, and commercial/industrial. The "uses" to which § 171–10 refers are clearly references to the object or purpose for which the land is suited or employed. The same meaning of the term "use" can be seen in § 171–33. This provision requires the Board, before any notice of intended disposition, to "classify the land according to its use or uses as provided in this chapter" and "determine the specific use or uses for which the disposition is intended[.]" Appellees point to no examples from Chapter 171 in which the term "use" is employed to include design, height or other building characteristics.

Further support for this construction can be found in § 171–93(3). Section 171–93(3) evinces the legislative intent that, in the case of disposition of residential lots, only restrictions on use for residential purposes shall expire in ten years. This provision requires the State to include in the deed or lease a restriction that the land shall be used only for residential purposes for a period of ten years.[5] We have repeatedly recognized that one provision of a comprehensive statute should be read in context of

---

[4] Section 171–63(b) was enacted as § 171–59(b). Its language remains essentially unchanged from the original form.

[5] Accordingly, the Nohs' deed contains the following covenant:

AND the GRANTEES, . . . covenant with the Grantor and its successors as follows:

(a) That the land hereby conveyed shall be used only for residence purposes for a period of ten (10) years from the date of issuance of this deed, or for fifteen (15) years from the date of sale, whichever period is

other provisions of that statute and in light of the general legislative scheme. *See* ***Pacific Ins. Co. v. Oregon Auto. Ins. Co.***, 53 Haw. 208, 212, 490 P.2d 899, 902 (1971). Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole. ***Sutherland, supra***, § 46.05; ***In re City & County Corp. Counsel***, 54 Haw. 356, 374, 507 P.2d 169, 178 (1973). Reading § 171–93 in context with § 171–63(b), it is apparent that the language in § 171–63(b), "all restrictions relating to the use thereof shall expire," refers to the use of the property for residential purposes. No provision is made for expiration of other types of restrictions.

Thus, it is apparent from a reading of the entire statute and of the other sections of Chapter 171 that the term "use" is employed consistently throughout. To adopt Appellees' construction would be inconsistent with the legislature's intent. We hold, therefore, that the restrictive covenant pertaining to height in Appellees' deed did not expire pursuant to HRS § 171–63(b) since it is not a "restriction relating to the use" of the property within the meaning of the statute. Consequently, we find that the lower court erred in dismissing Appellants' complaint seeking to enforce the covenant.

## III.

Accordingly, we reverse the order of the court below granting Appellees' motion to dismiss the complaint and remand the case for proceedings consistent with this opinion.

*James N. Duca* (*Daniel Orodenker* with him on the briefs; of counsel, Kessner, Duca & Maki) for Plaintiffs–Appellants.

*Lane T. Ishida* (*Johnson H. Wong* and *Derwin Hayashi* with him on the briefs), Deputy Attorneys General, for Intervenor–Plaintiff–Appellant.

*Stanley D. Suyat* (*Gilbert S. Coloma–Agaran* with him on the brief; of counsel, Carlsmith, Wichman, Case, Mukai & Ichiki) for Defendants–Appellees.

---

shorter; provided, that any change in the use of the land herein conveyed after the said ten (10) or fifteen (15) years, as the case may be, shall be in accordance with applicable State, county or city and county zoning requirements.