**Electronically Filed
Supreme Court
SCPW-17-0000927
05-JUN-2018
09:49 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

NICK GRUBE, Petitioner,

vs.

THE HONORABLE ROM A. TRADER, Judge of the Circuit Court of the
First Circuit, State of Hawai'i, Respondent Judge,

and

STATE OF HAWAI'I; ALAN AHN; and TIFFANY MASUNAGA, Respondents.

SCPW-17-0000927

ORIGINAL PROCEEDING
(CR. NO. 15-1-1338)

JUNE 5, 2018

RECKTENWALD, C.J., McKENNA, POLLACK, AND WILSON, JJ., AND
CIRCUIT JUDGE VIOLA, IN PLACE OF NAKAYAMA, J., RECUSED

OPINION OF THE COURT BY POLLACK, J.

Petitioner Nick Grube filed a petition for writs of

prohibition and mandamus (petition) to obtain access to judicial

records and documents related to a circuit court criminal

proceeding held on September 9, 2016. These court documents and records were sealed, and have remained sealed, by a series of circuit court orders. The petition also seeks an order prohibiting the circuit court judge from requiring Grube to retain an attorney in order to assert a constitutional right of access to judicial records.

Upon our review of the procedures employed by the circuit court, we conclude that the court did not provide adequate notice and opportunity for interested persons objecting to the sealing to be heard prior to issuing its order and failed to sufficiently articulate the reasoning supporting the order in its findings. In addition, upon reviewing the sealed records and documents, we hold that the substantive requirements for sealing were not met in this case because the record fails to demonstrate a compelling need sufficient to overcome the public's constitutional right of access.

We further hold that, because the constitutional right of access inheres in every member of the public and Grube asserted this interest as an individual, Grube had a right to represent himself in the unsealing proceedings. The circuit court therefore also erred by refusing to allow Grube to appear pro se and requiring him to obtain counsel.

Accordingly, we grant the petition and order that the circuit court unseal the documents--provided, however, that the

effective date of our directive shall be ten days after the filing of this opinion, unless within the ten days the State requests a hearing to provide additional evidence to demonstrate that the documents or some portion thereof must remain sealed to serve a governmental interest of sufficient gravity to overcome the public's constitutional right of access.  Following any such hearing, the circuit court shall promptly prepare specific findings in conformance with the substantive requirements set forth in this opinion if these requirements have been met; otherwise our order shall take immediate effect.  We further order that Grube be permitted to represent himself in any further proceedings on this matter.

## I. BACKGROUND

### A.    The Criminal Case

Alan Ahn, a Honolulu police officer, and Tiffany Masunaga, his girlfriend, were charged by indictment in the Circuit Court of the First Circuit (circuit court) with multiple drug-related offenses on August 26, 2015.[1]  Ahn has since pleaded no contest and been sentenced to a sixty-day jail term as a condition of a four-year probationary term.  By contrast, the

---

[1]    In deciding this case, we take judicial notice of all records, sealed and unsealed, in the underlying criminal case.  See State v. Akana, 68 Haw. 164, 165, 706 P.2d 1300, 1302 (1985) ("This court has validated the practice of taking judicial notice of a court's own records in an interrelated proceeding where the parties are the same.").

public record indicates that Masunaga's case is still pending as of this filing, and no disposition of the charges is reflected.

### 1. Sealing of Records, Files, and Proceedings Relating to the September 9, 2016 Hearing

On Friday, September 9, 2016, the circuit court held a hearing scheduled to begin at 4:00 p.m., the nature and scope of which is not discernible from the public record.[2]  Following the proceeding, the circuit court entered an order sealing the entire legal file in the case.  On September 16, the court filed a second order superseding its September 9 sealing order.

Then, on October 11, 2016, the circuit court issued a third order setting aside its September 9 and September 16 sealing orders.  The court concluded that "[u]pon further review . . . the prior orders were overly broad in that they resulted in the sealing of the entire legal file pertaining to both Defendants."  The court redefined the scope of the previous order to seal "those documents, court minutes, transcripts and other information relating to the September 9, 2016 proceeding," including the two previous orders that it had set aside.

In its October 11 order, the circuit court stated that it had been advised that the proceedings in this case related to potentially one or more ongoing investigations.  Without

---

[2]     The Honorable Rom A. Trader presided.

providing further details, the court concluded that public disclosure of the September 9, 2016 proceeding was substantially likely to interfere with these ongoing investigations and that less drastic alternatives to partially sealing the record were not viable to maintain the integrity of the law enforcement operations.  The court thus held that the "the public's right of access must yield to the compelling investigatory needs of law enforcement."  The court further directed the State and Masunaga to timely inform it when circumstances change such that rescinding the order would be appropriate.

As a result of the court's order, all documents and information relating to the September 9, 2016 hearing remained fully sealed and inaccessible to the public, including the two previous sealing orders.[3]

### 2. Motion to Unseal Records

On September 29, 2017, Grube, a reporter for Honolulu Civil Beat, Inc. (Civil Beat), filed a motion to unseal

---

[3]     The public docket entries for the sealed documents now read in some variation as follows:

Other

Converted DOC ID: SEAL, DOC Name: (SEALED) DOCUMENT (PER ORDER REMOVING DOCUMENTS FILED ON SEPTEMBER 9, 2016 & SEPTEMBER 16, 2016 FROM DOCKET & SEALING) (CALL LDB), Comments: NOTE: REFER TO DOCKET NO 59 – DOCUMENT SEALED AS PART OF DOCKET NO 59)

"whatever documents were sealed" by the October 11, 2016 order.
The motion was based on the "constitutional right of access
provided by the First Amendment of the U.S. Constitution and
article I, section 4 of the Hawaiʻi Constitution."

### a. October 31, 2017 Hearing

A hearing on the motion to unseal was held on October
31, 2017. At the opening of the hearing, Grube identified
himself as "Nick Grube, Honolulu Civil Beat." When the court
then asked if he was representing Civil Beat's interest in the
matter, Grube responded "Uh-huh." The court explained to Grube
that under Hawaiʻi law, business entities must be represented by
an attorney. Grube objected, stating that he made the motion on
his own and would like to proceed pro se. Citing the manner in
which the motion had been captioned,[4] the court declined to allow
Grube to represent himself: "[A]lthough you, yourself, may be

---

[4] In the space at the top left of the center of the first page of
the motion to unseal, the following was indicated:

NICK GRUBE

Honolulu Civil Beat Inc.

[address]

[City, State, zip code]

[phone]

[fax number]

[email address]

partially making this request, it was filed under the caption you, as representing Civil Beat." The court continued the hearing to November 7, 2016, instructed Grube to make inquiries as to whether Civil Beat would retain an attorney, and ordered the State and the defendants to file responses to Grube's motion to unseal.

### b. Responses to Motion to Unseal

Masunaga and Ahn filed statements of no opposition to Grube's motion. Masunaga indicated that she had not been fully advised by her prior counsel regarding the motion to seal and had not given prior counsel permission to make representations regarding the motion on her behalf. She also stated that she believes the sealing request was made to protect certain individuals related to the prosecutor then assigned to the case, whom her prior counsel was also representing in a separate criminal matter in federal court.

The State filed an opposition to Grube's motion, arguing that the circuit court properly identified the State's compelling interest in preserving the integrity of investigations and sufficiently tailored its order to serve that interest. The opposition included a declaration by a deputy

prosecuting attorney averring that the investigations identified in the sealing order remained ongoing.[5]

### c.    November 7, 2017 Hearing on the Motion to Unseal

On November 7, 2017, the court held the continued hearing on the motion to unseal. At the outset of the hearing, Grube, through his counsel, again objected to the circuit court requiring him to retain counsel. Counsel clarified that he was representing Grube in his personal capacity and not Civil Beat, and he further stated that Grube was asserting his personal constitutional right of access. The court responded that the contents of the motion and the manner in which it was captioned led the court to believe Grube was representing Civil Beat's interests, which only a licensed attorney was permitted to do under relevant Hawai'i law.

Regarding the unsealing motion, the court engaged the deputy prosecuting attorney appearing for the State in the following colloquy:

> THE COURT:  . . . [F]irst of all, is the -- is -- are there one or more investigations that are currently active and ongoing that relate to the instant case?
>
> [PROSECUTOR]:  Yes, your Honor.

---

[5]    The prosecutor initially assigned to Masunaga's case, whom Masunaga's prior defense counsel represented in a separate federal criminal case, did not sign the submissions or enter court appearances related to Grube's unsealing motion, including the petition currently before this court.

THE COURT: And the information and documents that were previously sealed by virtue of the Court's October 11, 2016 order, do these materials and information, do they relate to these one or more investigations?

[PROSECUTOR]: Yes, your Honor.

THE COURT: All right. And in your view, would disclosure of those sealed materials substantially interfere with or have an adverse impact on any of these investigations?

[PROSECUTOR]: Potentially very serious and adverse, your Honor.

THE COURT: All right. And I'm going to ask you: In what way or how? I'm not asking you right now for the specifics as far as that goes, but I need to understand a little bit more in terms of how you believe -- if you can explain how disclosure would detrimentally impact those investigations. And, basically, without getting into the specifics, for example, I think Mr. Grube's filing and the case authority is fairly clear.

. . . [D]o you have any concerns about potential targets of these -- this or these investigations becoming informed about this information?

[PROSECUTOR]: Yes, your Honor. Generally, yes.

THE COURT: And how would that pose a problem? I don't want to presume anything.

[PROSECUTOR]: Your Honor, they could either flee or destroy evidence. We would also be concerned about safety of witnesses.

THE COURT: And do you have any -- any sense for how much longer these investigations or an investigation is anticipated to take, if you know?

[PROSECUTOR]: I do not know, your Honor. All I can say is that it is ongoing.

Grube then argued through his attorney that the mere assertion of an ongoing investigation is not sufficient to override the public's constitutional right of access to judicial

9

records and proceedings.[6]  Rather, Grube explained, the State must provide evidence demonstrating an active investigation to which disclosure would pose clear potential harm, which the court may then verify through in-camera review.

Grube urged the court to examine more carefully the State's justification for sealing in this case, pointing to Masunaga's statement of no opposition in which she disclaimed any interest in sealing the documents and stated her belief that the motion was intended to protect individuals associated with the previously assigned prosecutor.  Given Masunaga's personal indifference to the disclosure, Grube argued, the safety of witnesses in the case was not a valid concern.  Grube also requested that the court take judicial notice of the federal criminal case against the prior prosecutor, in which the U.S. Attorney had argued that the prosecutor and Masunaga's prior counsel had a history of improperly exchanging confidential investigatory information.  Grube contended that, in light of this alleged history of misused confidential information, the court should not accept at face value the State's general assertions that secrecy is needed to protect an investigation.

---

[6]     All further arguments and filings attributed to Grube were made through his retained counsel.

Lastly, Grube argued that sealing the entirety of the sealed documents and their corresponding docket entries was not narrowly tailored inasmuch as any information deemed to be a threat to ongoing investigations could be redacted, preserving the public's right of access to the remainder of the documents.

At the conclusion of the hearing, the circuit court orally denied the motion to unseal, stating that it "accept[ed] the prosecutor's representations" and was not going "to attempt to inject the Court's nose into the investigations that are ongoing." The court emphasized that the State and Masunaga were required to inform the court should circumstances change such that the sealing order was no longer needed.

### d.    Findings of Fact, Conclusions of Law, and Order Denying the Motion to Unseal

On November 24, 2017, the circuit court entered its findings of fact, conclusions of law, and order denying the motion to unseal. The court found that there were legitimate concerns that disclosure of the documents would adversely impact one or more ongoing investigations and the safety of individuals. The court then reaffirmed all the prior rulings made in the sealing order, stating that "the public's qualified right to access must defer to the State's compelling and substantial interest in sealing the subject records" because the

11

sealing was "essential to preserve higher values" and narrowly tailored.

### B. Proceedings Before this Court

### 1. Grube's Petition for Writ of Prohibition and Writ of Mandamus

On December 29, 2017, Grube filed a petition with this court seeking a writ of prohibition (1) prohibiting the circuit court from enforcing any order to seal records and (2) prohibiting the circuit court from requiring him to retain an attorney in order to assert his public access claim. Grube also sought a writ of mandamus directing the circuit court to comply with the standards for sealing set forth in Oahu Publications Inc. v. Ahn, 133 Hawai'i 482, 331 P.3d 460 (2014).[7]

Grube argues that, under Ahn, vague statements that records in a criminal case may interfere with a separate law enforcement investigation are not sufficient to overcome the strong constitutional presumption that criminal proceedings and judicial records are open to the public. (Citing 133 Hawai'i at 507, 331 P.3d at 458.) While Grube acknowledges that, under the right circumstances, harm to an active criminal investigation may overcome the public's constitutional right of access, he

_____

[7] Because unsealing the currently sealed documents will require an order by the circuit court, we interpret Grube's mandamus petition to also request an order directing the circuit court to unseal the documents.

12

maintains that proof of such a compelling interest requires more than an unsubstantiated assertion by the State. The circuit court therefore erred, Grube argues, by deferring to the State's asserted justifications and failing to insist on evidence to support specifically identified threats to the investigation.

Grube also contends that the scope of the circuit court's order was excessive because the court did not attempt to learn the nature of the ongoing investigation in order to assess whether redaction would sufficiently serve law enforcement's compelling interest. The sealing order was therefore not narrowly tailored, Grube argues, and erasing all references to the scope and nature of the September 9, 2016 proceeding deprived the public of any meaningful opportunity to contest the sealing or suggest viable alternatives.

Lastly, Grube contends that he had asserted his personal constitutional right of access and thus should have been permitted to represent himself under Hawaii Revised Statutes (HRS) § 605-2 (1993).[8] Grube explains that "Civil Beat"

---

[8] HRS § 605-2 provides in relevant part as follows:

Except as provided by the rules of court, no person shall be allowed to practice in any court of the State unless that person has been duly licensed so to do by the supreme court; provided that nothing in this chapter shall prevent any person, plaintiff, defendant, or accused, from appearing in person before any court, and there prosecuting or defending that person's, plaintiff's, defendant's, or

(continued . . .)

13

was included in the caption of his motion in order to comply with Hawai'i Rules of Penal Procedure (HRPP) Rule 2.2(d)(1) (2012),[9] which requires a litigant to list an office address on all filings. The circuit court therefore erred, Grube contends, by requiring him to retain an attorney in order to object to the sealing of judicial records.

### 2. Responses to Grube's Petition

By order entered on January 25, 2018, this court directed an answer to the petition. Judge Trader notified the court of his intent not to submit a response. Ahn and Masunaga each filed a response of no position. Masunaga's answer reiterates that she was never fully advised by her prior counsel regarding the motion to seal and did not authorize any representations regarding the motion. Masunaga further restates her belief that the sealing request was made to protect the

---

(. . . continued)

accused's own cause, without the aid of legal counsel . . . .

[9]    HRPP Rule 2.2(d) provides in relevant part as follows:

(d) Form of First Page of a Document. Except as provided in paragraph (f), the first page of each document shall be in the following form:

(1) The space at the top left of the center of the page shall contain the name, attorney number, office address, telephone number, facsimile number (if any), and electronic mail address of the attorney for the party in whose behalf the document is filed, or of the party if appearing pro se[.]

attorney prosecuting her, whom her prior counsel was simultaneously representing in a separate proceeding, and that her prior counsel did not properly consider whether the sealing would be in her best interest.

The State filed an answer opposing Grube's petition in which it argues that Grube's contentions amount to assertions that the circuit court erred.  Mere error, the State contends, does not constitute a flagrant and manifest abuse of discretion such that issuance of a writ of mandamus or prohibition is appropriate.  The State also argues that the circuit court's October 11, 2016 order properly identified the State's compelling interest in preserving the integrity of ongoing investigations.  The order was also narrowly tailored to serve that interest, the State maintains, because it was limited to one day of proceedings rather than the entire file.  The State further contends that the court rightly declined to allow Grube, a non-attorney, to appear in a representative capacity for Civil Beat because HRS § 605-14[10] prohibits the unauthorized practice of law.

---

[10]     HRS § 605-14 (1993 & Supp. 2017) provides in relevant part as follows:

> It shall be unlawful for any person, firm, association, or corporation to engage in or attempt to engage in or to offer to engage in the practice of law, or to do or attempt to do or offer to do any act constituting the practice of

(continued . . .)

Attached to the State's answer is the declaration of a deputy prosecuting attorney. The prosecutor avers that he has reviewed the records and files relating to this case. Substantively, the prosecutor's declaration states only that "[i]nvestigations into matters related to information presented at the September 9, 2016 proceeding are still ongoing. Because the investigation is ongoing, the Circuit Court's order to seal the proceedings remains valid."

## II. DISCUSSION

### A.    The Motion to Unseal

The First Amendment to the U.S. Constitution and article I, section 4 of the Hawai'i Constitution grant the public a right of access to court proceedings in criminal cases.[11] Oahu Publ'ns Inc. v. Ahn, 133 Hawai'i 482, 494, 496, 331 P.3d 460, 472, 474 (2014). The right is not limited to merely observing criminal trials. See In re The Herald Co., 734 F.2d 93, 98 (2d Cir. 1984) ("It makes little sense to recognize a right of

_____

(. . . continued)

> law, except and to the extent that the person, firm, or association is licensed or authorized so to do by an appropriate court, agency, or office or by a statute of the State or of the United States.

[11]    Article I, section 4 of the Hawai'i Constitution safeguards the right of public access to criminal trials at least to the extent of the First Amendment to the U.S. Constitution, and it may afford greater protections. Oahu Publications Inc. v. Ahn, 133 Hawai'i 482, 494, 331 P.3d 460, 472 (2014).

16

public access to criminal courts and then limit that right to the trial phase of a criminal proceeding, something that occurs in only a small fraction of criminal cases."). Rather, this court has indicated that the public has a constitutional right of access to criminal proceedings generally, as well as the records thereof.[12] See Ahn, 133 Hawai'i at 498-99, 331 P.3d at 476-77 (applying qualified right to sealed transcript of court proceedings).

The right of public access corresponds with our system's "deeply ingrained" traditional mistrust for secret trials, which has led "the general policy of open trials [to] become firmly embedded in our system of jurisprudence." Gannett Pac. Corp. v. Richardson, 59 Haw. 224, 228, 580 P.2d 49, 54 (1978). The right of access thus functions not only to protect the public's ability to obtain information--a requisite "to the enjoyment of other First Amendment rights"--but also "as a safeguard of the integrity of our courts." Ahn, 133 Hawai'i at 494-95, 331 P.3d at 472-73 (quoting Globe Newspaper Co. v.

---

[12] The constitutional right of access does not extend to particular documents and proceedings that have been traditionally closed to the public and for which public access would not logically have a positive effect on the functioning of the process at issue. Ahn, 133 Hawai'i at 494, 331 P.3d at 472. The State does not argue that the constitutional right of public access is wholly inapplicable to the September 9 proceeding and the records thereof, and our review of the sealed materials confirms that the hearing and documents fall within the scope of the constitutional right.

Superior Court for the Cty. of Norfolk, 457 U.S. 596, 604 (1982); State v. Hashimoto, 47 Haw. 185, 200, 389 P.2d 146, 155 (1963)). "The corrective influence of public attendance at trials for crime" serves to limit "unfairness, discrimination, undue leniency, favoritism, and incompetence" in our administration of justice. Id. at 495, 331 P.3d at 473 (quoting Territory v. Scharsch, 25 Haw. 429, 436 (1920)); Gannett Pac. Corp., 59 Haw. at 230, 580 P.2d at 55. In short, open courtroom proceedings are "important to the liberty of the people." Scharsch, 25 Haw. at 436.

Notwithstanding these serious considerations, the public's constitutional right of access is not absolute. Ahn, 133 Hawaiʻi at 496, 331 P.3d at 474. In "rare and compelling circumstances," court proceedings may be closed to protect an interest "that outweighs the value of openness." Id. at 495-96, 331 P.3d at 473-74 (quoting Honolulu Advertiser, Inc. v. Takao, 59 Haw. 237, 238, 580 P.2d 58, 60 (1978); Press-Enter. Co. v. Superior Court of Cal., Riverside Cty. (Press-Enter. Co. I), 464 U.S. 501, 510 (1984)); cf. In re Knight Pub. Co., 743 F.2d 231, 234 (4th Cir. 1984) ("Nonetheless, there is a strong presumption in favor of openness."). We held in Ahn that, when a party or trial court seeks to prevent public access to criminal proceedings or the records thereof, both procedural and

18

substantive requirements must be satisfied to overcome the right of public access.  133 Hawaiʻi at 497, 331 P.3d at 475.  We now consider each requirement with regard to the sealed documents in this case.

### 1.    The Procedural Requirements to Seal Documents or Close Court Proceedings

As set forth in Ahn, the "procedural prerequisites to entry of an order closing a criminal proceeding to the public are (1) those excluded from the proceeding must be afforded a reasonable opportunity to state their objections; and (2) the reasons supporting closure must be articulated in findings." 133 Hawaiʻi at 497-98, 331 P.3d at 475-76 (quoting United States v. Brooklier, 685 F.2d 1162, 1167-68 (9th Cir. 1982)).  These "requirements are not mere punctilios, to be observed when convenient."  Phoenix Newspapers, Inc. v. U.S. Dist. Court for Dist. of Ariz., 156 F.3d 940, 951 (9th Cir. 1998).  As the responses to the petition in this case demonstrate, often "parties to the litigation are either indifferent or antipathetic to disclosure requests."  Id.  Thus, these procedures "provide the essential, indeed only, means by which the public's voice can be heard."  Id.  Further, the procedures ensure that the trial judge is apprised of the relevant interests at stake in order to render an informed decision, and they provide a basis for the public and reviewing courts to

19

fairly assess the judge's reasoning, thus protecting trust in the judicial process.  Id.

Under the first requirement, the public must be afforded both notice of the closure and an opportunity to be heard.  Id.  The notice must be "calculated to inform the public that its constitutional rights may be implicated in a particular criminal proceeding."  United States v. Criden, 675 F.2d 550, 559 (3d Cir. 1982).  As the U.S. Court of Appeals for the Second Circuit has stated, it is "entirely inadequate to leave the vindication of a First Amendment right to the fortuitous presence in the courtroom of a public spirited citizen willing to complain about closure."  Application of The Herald Co., 734 F.2d 93, 102 (2d Cir. 1984).  Thus, motions requesting closure must be docketed a reasonable time before they are acted upon.[13]  Brooklier, 685 F.2d at 1168.  What constitutes a reasonable time is "dictated by circumstances," Criden, 675 F.2d at 559, but it must generally be sufficient to afford the public an opportunity

---

[13]  The moving party may request leave to file supporting evidence for its sealing motion ex parte and under seal pending the court's disposition of the motion.  See Washington Post v. Robinson, 935 F.2d 282, 290 (D.C. Cir. 1991).  In the event the motion to seal is denied, the party may request to withdraw the supporting evidence prior to disclosure.  See State v. McEnroe, 174 Wash. 2d 795, 804-05 (2012).

to intervene prior to the sealing.[14]  See In Re The Herald, 734 F.2d at 102.

Once notice is provided, a hearing must be held under procedures adequate to afford the public a meaningful opportunity to object or offer alternatives to the closure. Phoenix Newspapers, 156 F.3d at 949.  Even when the public by necessity lacks full knowledge of the basis of the motion to seal, its participation in the hearing allows the judge to consider other relevant interests and possible alternatives to sealing, thus providing a more informed basis for the determination.  See id. at 951; Criden, 675 F.2d at 560.

Here, the circuit court did not fulfill the procedural requirements of providing notice and an opportunity to be heard.[15]  It does not appear that the court provided notice to the public of the in-court motion to seal the entire legal file,

_____

[14]    In very limited circumstances, a compelling interest may require a court to immediately close proceedings or seal documents.  Even when an immediate closure or sealing order is necessary, public notice and an opportunity to be heard should follow as promptly as feasible, with the judge's reasons for departing from the normal procedure "set forth, under seal if appropriate, for eventual appellate scrutiny."  In Re The Herald, 734 F.2d at 102 n.7; accord Oahu Publ'ns Inc. v. Takase, 139 Hawaiʻi 236, 247, 386 P.3d 873, 884 (2016) (holding that a court may immediately seal filed documents to protect wrongfully included personally identifying information provided that notice and an opportunity to request a hearing promptly follow).

[15]    We also note that neither the circuit court's signed September 9 sealing motion nor the superseding September 16 sealing order was accompanied by written findings, as procedurally required under Ahn.  See 133 Hawaiʻi at 497-98, 331 P.3d at 475-76.

nor did it permit the public an opportunity to be heard before it ordered that the records of the September 9 proceeding be sealed.

The September 9 proceeding was also scheduled near the end of the business day late on a Friday afternoon, and the order to seal was entered after the normal close of business. The court subsequently removed all entries associated with the September 9 proceeding and the motion to seal from the docket entirely, leaving only the October 11 order to seal as evidence that the proceeding and sealing took place. "Under these circumstances, even the most vigilant of reporters could not have known that their right of access was being denied." Criden, 675 F.2d at 560. It is thus unsurprising that nearly a year elapsed before an interested member of the public became sufficiently aware of the events to file a motion to unseal.

As we have stated, "the standards promulgated by the United States Supreme Court place the responsibility on the trial court to provide notice that a compelling interest may necessitate closure of a proceeding, and afford an opportunity for the public to be heard." Ahn, 133 Hawaiʻi at 498, 331 P.3d at 476. The procedures employed by the circuit court were plainly insufficient to fulfill this responsibility.

22

2.    **The Substantive Requirements to Seal Documents or Close Court Proceedings**

The right of access protected by the First Amendment and article I, section 4 of the Hawaiʻi Constitution can only be overcome by findings that "the closure is essential to preserve higher values" and that the closure is "narrowly tailored" to serve that interest.  Ahn, 133 Hawaiʻi at 498, 331 P.3d at 476; see also Globe Newspaper Co., 457 U.S. at 606–07 ("Where . . . the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.").  Thus, the substantive factors that the trial court must consider in its written findings are "(1) [the] closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." Ahn, 133 Hawaiʻi at 497–98, 331 P.3d at 475–76.

In Ahn, we emphasized that, to find that the strong presumption of openness has been overcome, a court must make a record of "specific findings" that these substantive requirements have been met.  133 Hawaiʻi at 507, 331 P.3d at 485 (emphasis added).

> The trial court <u>may not rely on generalized concerns</u>, but must indicate facts demonstrating compelling interest justifying the continued sealing of the documents. Additionally, the court must <u>specifically explain</u> the necessary connection between unsealing the transcript and the infliction of irreparable damage resulting to the compelling interest.

<u>Id.</u> (emphases added) (quotes and citations omitted); <u>see also</u> <u>Moana v. Wong</u>, 141 Hawai'i 100, 113, 405 P.3d 536, 549 (2017) (rejecting the use of vague assertions and requiring specific details when identifying "compelling circumstances" sufficient to overcome the strong presumption that the standard time limitation in Hawai'i Rules of Penal Procedure Rule 5(c) applies).  The trial court's findings, which may themselves be partially filed under seal when necessary, must contain sufficient detail for a reviewing court to evaluate each of the criteria, including the strength of the interest weighing toward closure or sealing, the potential that disclosure will cause irreparable harm to that interest, and the feasibility of protecting the interest through alternate methods.  <u>See</u> <u>Phoenix Newspapers</u>, 156 F.3d at 949-50.

### a. Identifying a Compelling Interest Served by Closure or Sealing

Under the first substantive requirement to close court proceedings or seal court records, the asserted government interest served by nondisclosure must be "compelling."  <u>Ahn</u>, 133 Hawai'i at 497-98, 331 P.3d at 475-76.  To qualify as compelling,

24

the interest must be of "such gravity as to overcome the strong presumption" in favor of openness. See Moana, 141 Hawaiʻi at 111, 405 P.3d at 547. Although privacy rights may in some instances rise to the level of compelling, simply preserving the comfort or official reputations of the parties is not a sufficient justification. In re McClatchy Newspapers, Inc., 288 F.3d 369, 374 (9th Cir. 2002) ("Who could or would deny that reputation is a valuable asset? . . . But injury to official reputation is an insufficient reason "for repressing speech that would otherwise be free." (quoting Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 841–42 (1978))); Doe v. Univ. of Montana, No. CV 12-77-M-DLC, 2012 WL 2416481, at *4 (D. Mont. June 26, 2012) ("Reduced to its essence, the joint request to keep this case file sealed reflects a determination by the parties, based on their respective individual interests, that they will mutually benefit from maintaining the secrecy of this federal proceeding. . . . But lost in all of this is the valid and compelling interest of the people . . . ."). Rather, to warrant departing from the "tradition of public access . . . firmly embedded in our system of jurisprudence," the asserted interest must be of such consequence as to outweigh both the right of access of individual members of the public and the general benefits to public administration afforded by open

trials.  See Ahn, 133 Hawai'i at 495, 331 P.3d at 473 (internal quotes and citations omitted).

Here, the circuit court's October 11, 2016 sealing order and November 24, 2017 order denying the motion to unseal cite law enforcement's interest in preserving the integrity of ongoing investigations and assert that disclosure would interfere with these operations.  The November 24 order also cites a concern that disclosure of the information may adversely impact the safety of individuals.  As Grube acknowledges and other courts have held, these concerns may be compelling interests sufficient to overcome the strong access presumption under the right circumstances.[16]

---

[16]    Because this jurisdiction has not yet addressed when preserving the integrity of an ongoing investigations constitutes a compelling interest, the State analogizes the present case to Times Mirror Co. v. United States, 873 F.2d 1210, 1214 (9th Cir. 1989), and In re The Macon Telegraph Publishing Co., 900 F. Supp. 489, 491 (M.D. Ga. 1995), in which federal courts denied motions by the media to unseal search warrant documents associated with ongoing investigations.  The courts in Times Mirror and Macon Telegraph did not reach the question of whether the sealing served a compelling government interest, however, because they determined that the First Amendment qualified right of public access did not extend to warrant applications and affidavits in support thereof.  Times Mirror, 873 F.2d at 1216; Macon Tel., 900 F. Supp. at 491-92; contra In re Search Warrant for Secretarial Area Outside Office of Gunn, 855 F.2d 569, 573 (8th Cir. 1988) (concluding that the right of access does extend to search warrant applications and supporting materials, but holding the right was overcome by a compelling interest because the "documents describe[d] in considerable detail the nature, scope and direction of the government's investigation and the individuals and specific projects involved.").  This case involves neither a search warrant application nor an affidavit in support thereof, and thus we do not address whether the constitutional right of public access would apply to such documents.  See supra, note 12.

The circuit court's findings here, however, are fully lacking in the specificity required to demonstrate a compelling interest. The findings, which could have been entered partially under seal if necessary to preserve truly confidential matters, provide no details of any ongoing investigations and their relation to the September 9 proceeding. In the absence of such details, there is nothing by which the court could have determined that the asserted interest was of sufficient gravity to displace the strong presumption in favor of openness.[17] Similarly, the findings contain no information regarding how disclosure would impair these investigations or pose a danger to specific individuals.[18]

These indefinite findings are nearly identical to those the Ninth Circuit expressly rejected in Phoenix Newspapers, Inc. v. U.S. District Court for District of Arizona, 156 F.3d 940, 950 (9th Cir. 1998), which this court cited with approval in Ahn. 133 Hawai'i at 498, 331 P.3d at 476. In

_____

[17] There is nothing in the sealed documents to demonstrate on their face that disclosure would pose a threat to an interest of adequate gravity to overcome the public's constitutional right of access.

[18] The State responded to a series of questions during the November 7 hearing by expressing nonspecific concerns that disclosure might allow a suspect to learn of an investigation and flee, destroy evidence, or harm a witness. The circuit court's findings did not include these details, which would have been too generalized and unsupported to warrant closure in any event.

Phoenix Newspapers, the trial court entered findings prior to

sealing a court transcript indicating only that the court had

"been advised that [a jury tampering] investigation is ongoing

and . . . in a posture that the disclosure of the transcript

would constitute a serious risk of compromising the

investigation."  156 F.3d at 950.  Holding that the substantive

requirements for sealing had not been met, the Ninth Circuit

stated,

> At no time did the [trial] court specifically explain the necessary connection between unsealing the transcript and inflicting irreparable damage upon the security concerns it invoked as a compelling interest. . . . [N]either in the written closure orders nor in the hearings themselves did the court specify just how security would be thwarted[.] . . . Far from allowing meaningful appellate review of the closure order, these general statements, which simply stated that security interests compelled closure, . . . reveal nothing about the specific character of the risk to the jury tampering investigation that would result from unsealing the transcript. . . . Simply put, there was no evidence in the record, nor were any satisfactory findings entered, establishing why release of the transcripts would endanger juror safety.

Phoenix Newspapers, 156 F.3d at 950 (emphases added) (quotes and

citations omitted).

Just as in Phoenix Newspapers, the circuit court here

simply asserted that a security risk existed without

meaningfully identifying the connection between specific

individuals or investigations and the particular irreparable

harm that would result from disclosure of the sealed documents.

We held in Ahn that specific findings are necessary to satisfy

the first substantive requirement for sealing or closure, and

28

this requirement was unmet in this case.  133 Hawai'i at 504, 331 P.3d at 482.

### b. The Substantial Probability of Damage

Under the second substantive requirement set forth in Ahn, a court must find that disclosure is sufficiently likely to result in irreparable damage to the identified compelling interest.  133 Hawai'i at 507, 331 P.3d at 485.  It is not enough that damage could possibly result from disclosure, nor even that there is a "reasonable likelihood" that the compelling interest will be impeded; there must be a "substantial probability" that disclosure will harm the asserted interest.  Press-Enter. Co. v. Superior Court of Cal. for Riverside Cty. (Press-Enter. Co. II), 478 U.S. 1, 15 (1986) (rejecting the lesser "reasonable likelihood" standard as violating the First Amendment).  Further, the potential harm cannot be fleeting or readily curable through remedial measures; it must be irreparable in nature.  Ahn, 133 Hawai'i at 507, 331 P.3d at 485; Phoenix Newspapers, Inc. v. U.S. Dist. Court for Dist. of Ariz., 156 F.3d 940, 949-50 (9th Cir. 1998).

The findings included with the circuit court's October 11 order stated only that "[t]he Court finds and concludes that public disclosure of the September 9, 2016 proceedings, is substantially likely to interfere with and have an adverse

impact on potentially one or more of . . . ongoing investigations."[19]  This bare recitation of the legal standard is not adequately specific to support that harm to the State's asserted interest would be the substantially likely outcome if the sealed documents were disclosed.  Indeed, as discussed above, the court's findings did not include specific details demonstrating that interference with an ongoing investigation was a possible result of disclosure, much less a substantially probable one.  The findings also did not address whether the posited potential harm would be irreparable.  Because the circuit court did not make any such specific findings, the second substantive requirement for sealing was also not satisfied in this case.

### c. Narrow Tailoring

Under the third substantive requirement for sealing, a court must make findings demonstrating that "there are no [less restrictive] alternatives to closure that would adequately protect the compelling interest." Oregonian Pub. Co. v. U.S. Dist. Court for Dist. of Or., 920 F.2d 1462, 1466 (9th Cir. 1990) (citing Press-Enter. Co. II, 478 U.S. 1, 13–14 (1986)); accord Ahn, 133 Hawaiʻi at 504, 331 P.3d at 482.  "Even where

---

[19]    The probability of harm from disclosure was not addressed in the circuit court's order denying Grube's motion to unseal.

denial of access is appropriate, it must be no greater than necessary to protect the interest justifying it." United States v. Brooklier, 685 F.2d 1162, 1172 (9th Cir. 1982). Thus, where a feasible alternative exists that would protect the compelling interest while avoiding or minimizing impairment of the public's constitutional right of access, total sealing is inappropriate. Id. at 1169; see also Oregonian Pub. Co., 920 F.2d at 1467 n.1 ("The district court did not consider alternatives to closure that might protect Wolsky's interests. . . . The district court might have considered redacting portions of the plea agreement, or disclosing the agreement but placing Wolsky in a witness protection program, or recommending that Wolsky be placed in protective custody while in prison.").

As with the first two substantive requirements, the trial court's findings must be made with adequate specificity for a reviewing court to ascertain the court's reasoning, and the trial court may not "base its decision on conclusory assertions alone." Oregonian Pub. Co., 920 F.2d at 1466 (citing Press-Enter. Co. II, 478 U.S. at 13–14). The court should therefore make findings regarding specific alternatives and set forth its reasons for rejecting each. Id.; United States v. Criden, 675 F.2d 550, 560 (3d Cir. 1982) ("There is a fairly broad consensus that, before a court closes a pretrial criminal hearing, it must at least consider alternatives to closure and

explicitly state its reasons on the record for rejecting such alternatives.").

Here, the circuit court's October 11 order stated only that the court "considered whether less drastic alternatives" would "preserve law enforcement's compelling need to conduct its investigations" and concluded "that there are no other less restrictive alternatives which are viable."  The November 24 order denying Grube's motion to unseal made no further reference to alternatives except to state the court's belief that its order was narrowly tailored.  Neither order specifically discussed any alternatives and thus did not consider the feasibility of any possible alternatives.  Assuming a compelling interest was present in this case and irreparable harm was substantially likely to result, such alternatives might have included, for example, redaction of specific information in a document or sealing limited to a very restricted time period when true risk was present.[20]

---

[20]    At a minimum, the circuit court should also have considered the risks from disclosure with respect to each of the individual documents to justify its sealing.  And, even assuming that procedural and substantive requirements to seal any of the documents had been met, the court should have scheduled periodic review hearings to determine whether the reasons justifying the sealing continued to apply.  It was not sufficient to simply order the parties to alert the court when circumstances change because all too often "parties to the litigation are either indifferent or antipathetic to disclosure requests."  Phoenix Newspapers, 156 F.3d at 951.

A trial court's <u>pro forma</u> statement that alternatives were considered and rejected "does not afford a basis for determining whether the court applied the correct standard." <u>Brooklier</u>, 685 F.2d at 1169. There is nothing in the circuit court's findings from which we can judge if the sealing was "no greater than necessary to protect the interest [assertedly] justifying it." <u>Id.</u> at 1172. Accordingly, the third substantive requirement for sealing was also not fulfilled in the present case.

### 3. Mandamus is Warranted

Because the right of the public to access criminal proceedings is constitutionally protected, firmly established in our tradition, and crucial to the functioning of our justice system, there is a strong presumption that court proceedings and the records thereof shall be open to the public. <u>Ahn</u>, 133 Hawaiʻi at 508, 331 P.3d at 486. In light of these weighty concerns, this court held in <u>Ahn</u> that the strong presumption may be overcome only when strict procedural and substantive requirements have been met. <u>Id.</u> at 497, 331 P.3d at 475. Because one of these procedural requirements and all three of the substantive requirements were not satisfied in this case, the circuit court erred by ordering all documents related to the

September 9 proceeding sealed from the public.  Grube is therefore entitled to the writ of mandamus he seeks.[21]

## B. Grube's Right to Proceed Pro Se

Grube also challenges the circuit court's directive that he retain counsel to assert his objections to the sealing of the documents.  Grube contends that, throughout his motion to unseal, he used the first person and personally signed all the pleadings.  Grube explains that the Civil Beat address referenced in the motion appears in the "office address" portion of the caption to comply with HRPP Rule 2.2(d)(1).

The public's constitutional right of access is not unique to the news media.  See Gannett Pac. Corp. v. Richardson, 59 Haw. 224, 229-30, 580 P.2d 49, 54 (1978) ("The right of media representatives to be present is derived from their status as

---

[21]  The State argues that, notwithstanding any error in the circuit court's ruling, the grant of a writ of mandamus is an inappropriate remedy. (Citing Kema v. Gaddis, 91 Hawaiʻi 200, 204, 982 P.2d 334, 338 (1996).) Assuming that Grube, a non-party to the underlying criminal case, would be able to directly appeal the circuit court's order, contra Gannett Pac. Corp., 59 Haw. at 235, 580 P.2d at 58, the delay inherent in the appellate process would render the eventual release of the documents untimely.  Because the right of public access exists to provide members of the public with contemporary information about matters of current public interest so that they may effectively exercise their First Amendment rights, the belated release of records to which the public is rightfully entitled is not an adequate remedy.  In light of these considerations, we hold the circuit court's order satisfies the standards for mandamus.  See Breiner v. Takao, 73 Haw. 499, 502, 835 P.2d 637, 640 (1992) ("[M]andamus is the appropriate remedy where the order of the court imposed a restraint on free speech rights unrelated to the merits of the criminal trial and thus could not be raised on appeal."); CBS, Inc. v. U.S. Dist. Court for Cent. Dist. of Cal., 765 F.2d 823, 825 (9th Cir. 1985) ("Mandamus is the appropriate procedure for CBS to seek review of the orders denying it access to the sealed documents.").

members of the general public.").  Any member of the public may assert a personal right to access judicial proceedings and records.  Oahu Publ'ns Inc. v. Ahn, 133 Hawaiʻi 482, 496, 331 P.3d 460, 474 (2014).

Additionally, the right of self-representation exists in both criminal and civil proceedings.  State v. Hutch, 75 Haw. 307, 318, 861 P.2d 11, 18 (1993); In re Ellis, 53 Haw. 23, 29, 487 P.2d 286, 290 (1971).  This is reflected in Hawaiʻi statutes regulating the practice of law, which expressly preserve the right of every natural person to "appear[] in person before any court, and there prosecut[e] or defend[] that person's, plaintiff's, defendant's, or accused's own cause, without the aid of legal counsel."  HRS § 605-2.

Here, there was nothing in Grube's motion that was clearly inconsistent with the filing being an assertion of Grube's personal constitutional right of access to court proceedings and records.  The inclusion of "Civil Beat" in the caption of the motion was consistent with HRPP Rule 2.2(d)(1)'s requirement that litigants include an office address with all filings.  Therefore, under Hawaiʻi statute and precedent, Grube was permitted to prosecute his own cause before the circuit court, and the court erred by requiring him to retain counsel to enforce his personal right.

## III. CONCLUSION

Neither the procedures nor the substantive reasons employed by the circuit court fulfilled the requirements to overcome the public's constitutional right of access to court proceedings and records that this court set forth in Oahu Publications Inc. v. Ahn, 133 Hawai'i 482, 497-98, 331 P.3d 460, 475-76 (2014). Accordingly, we hold that the circuit court erred in denying Grube's motion to unseal. We also hold that, because the constitutional right of access inheres in all members of the public and Grube asserted this interest as an individual, the circuit court erred in refusing to allow Grube to appear pro se and requiring him to obtain counsel.

Accordingly, we grant Grube's petition for a writ of mandamus and order that the circuit court unseal the documents. The effective date of our directive shall be ten calendar days after the filing of this opinion, unless within the ten days the State requests a hearing to provide additional evidence to demonstrate that the documents or some portion thereof must remain sealed to serve a governmental interest of sufficient gravity to overcome the public's constitutional right of access. Upon such request, the circuit court shall promptly set, docket, and hold a hearing, then expeditiously prepare specific findings in conformance with the substantive requirements set forth in

36

this opinion if these requirements have been met; otherwise, our order shall take immediate effect.  We further grant Grube's petition for a writ of prohibition in part and order that Grube be permitted to represent his own interests in all further matters related to this proceeding.  We deny Grube's petition for a writ of prohibition insofar as it seeks an order prohibiting the circuit court from enforcing its sealing order because we deem it unnecessary in light of our disposition.

Robert Brian Black
for petitioner

Robyn B. Chun
for respondent judge
the Honorable Rom A. Trader

Duane M. Kokesch
for respondent
State of Hawai'i

Andrew T. Park
for respondent
Alan Ahn

William A. Harrison
for respondent
Tiffany Masunaga

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

/s/ Matthew J. Viola

